PITMAN, J.
Appellant Mahinderpal Singh Dhaliwal appeals the trial court's granting of a motion to dismiss filed by the Succession of Manmohan Dhaliwal. For the following reasons, we affirm the judgment of the trial court.
FACTS
This is the third time this matter has been before this court. See Dhaliwal v. Dhaliwal , 48,034 (La. App. 2 Cir. 9/11/13), 124 So.3d 470, writ denied , 13-2931 (La. 2/21/14), 134 So.3d 1165 (" Dhaliwal I "), and Dhaliwal v. Dhaliwal , 49,973 (La. App. 2 Cir. 11/25/15), 184 So.3d 773, writ denied , 16-0236 (La. 4/4/16), 190 So.3d 1204 (" Dhaliwal II ").
The instant consolidated cases involve members of the Dhaliwal family. Manmohan S. Dhaliwal ("Manmohan") and his wife Kailash K. Dhaliwal ("Kailash") had two sons, Mahinderpal S. Dhaliwal ("Paul") and Karminderdal S. Dhaliwal ("Karl"). Karl is married to Dhillon Sookham Dhaliwal ("Sookham"), and their daughter is Simran Dhaliwal Emaus ("Simran"). Manmohan died intestate on June 21, 2010, and Kailash was made the administratrix of his succession (the "Succession").
On February 9, 2011, Kailash and the Succession filed a petition against Karl and Sookham in which they claimed that Manmohan, Kailash and Karl were equal partners in a joint venture that owned multiple convenience stores. The parties filed cross-motions for summary judgment, and Karl and Sookham also filed a peremptory exception of prescription or peremption. The trial court sustained the exception, finding that the suit claiming a share of profits was not timely filed; denied Kailash and the Succession's motion for summary judgment; sustained Karl and Sookham's motion for summary judgment; and dismissed with prejudice Kailash and the Succession's claims. Kailash and the Succession appealed.
In a September 11, 2013 opinion, this court found that this matter involved genuine *1190 issues of material fact regarding whether a joint venture existed between Manmohan, Kailash and Karl and, therefore, that summary judgment was inappropriate. See Dhaliwal I . This court reversed the judgments of the trial court regarding summary judgment and prescription and remanded for further proceedings. Id.
On May 13, 2014, Kailash, in her individual capacity, filed a motion to dismiss her claims against Karl and Sookham, and the trial court granted this motion. The trial court also denied the Succession's former attorney's motion to prohibit Kailash from dismissing the Succession's claims against Karl and Sookham. See Dhaliwal II .
Kailash died on April 16, 2015. On June 4, 2015, the trial court appointed Simran as administratrix of the Succession.
On September 19, 2016, the Succession, through its administratrix Simran, filed a motion to dismiss with prejudice the February 9, 2011 lawsuit filed against Karl and Sookham. The Succession contended that it was Simran's fiduciary duty to preserve the property and assets of the Succession and that she determined it was proper to dismiss its claims against them. She reasoned that there was insufficient evidence to support a claim that Manmohan was a partner in an oral joint venture with Karl and Sookham that would entitle the Succession to any award and, therefore, that continued prosecution of the lawsuit would squander the assets of the Succession and breach her fiduciary duty owed to the heirs of the Succession.
On March 17, 2017, Paul, in his capacity as an heir to the Succession, filed an opposition to the motion to dismiss. He argued that Simran breached her duty to act as a prudent administratrix. He alleged that she did not enforce all of the obligations in favor of the Succession; did not preserve, repair, maintain and protect the property of the Succession; failed to produce and file an accounting; paid the Succession's attorney without authorization from the trial court; and was in collusion with the Succession's attorney, Karl and Sookham. He also alleged that Simran and the Succession's attorney were in possession of documents that showed viable claims and that she and the Succession's attorney had taken no affirmative steps to pursue these claims against Karl and Sookham.
The hearing on the motion to dismiss took place in several parts. On March 20, 2017, the Succession introduced into evidence a deposition of Kailash taken on October 27, 2011. Counsel for the Succession noted portions of Kailash's testimony that supported its argument that there was no evidence that a joint venture existed between Manmohan, Kailash and Karl. In her deposition, Kailash testified that it was a family business; that she and her husband gave Karl the money to open the first convenience store; that she and Manmohan were not involved in the purchase of any stores after the first two stores and did not know how they were financed; that she and Manmohan had no input in how the stores operated; and that she and Manmohan never declared any of the stores on their income taxes. Counsel contended that the lawsuit should be dismissed because there was no evidence to meet the burden of proof and it would be a squandering of assets to pursue an unsuccessful lawsuit.
Paul introduced into evidence a deposition of Kailash taken on May 9, 2011. Counsel for Paul noted portions of Kailash's testimony in support of his argument. In this deposition, Kailash testified that it was a combined joint venture of her and Manmohan's money with Karl's hard work and that she thought they each owned one-third of the business.
*1191 Paul called Simran as a witness. On cross-examination, Simran testified that she is the vice president of operations with Now Save stores. She explained that Now Save is owned by several corporations and that her father's interest in Now Save depends on the corporations. She stated that as administratrix, her duties are to oversee the Succession and to file an annual accounting and that she has a fiduciary duty to the Succession and its heirs. She testified that the assets of the Succession include a piece of property in the Monroe area; a piece of property in the Jackson, Mississippi, area; a bank account; and a car. She further testified that she discussed the merits of the case with the Succession's attorney and that she requested to dismiss the case because she has a fiduciary duty to preserve the assets "that are wasting away because of frivolous litigation." She stated that she had seen no physical evidence that there was an oral joint venture.
The testimony of Simran continued on October 10, 2017. She agreed that she makes the decisions regarding the Succession, including whether to dismiss or move forward with the claim against her parents. She stated that it caused her no concern to sue her parents because she has a fiduciary duty to the Succession. She noted her concern that the lawsuit was squandering the Succession's time and assets.
On November 14, 2017, the trial court filed a ruling granting the motion to dismiss. It agreed with Simran that there was not enough evidence to support the Succession's claim that an oral joint venture exists, that the lawsuit was doomed to fail at trial and that to proceed with the lawsuit would waste the Succession's assets. It found that Paul did not produce sufficient evidence to show that dismissing the lawsuit was improper. Therefore, it found that the evidence before it did not demonstrate the existence of an oral joint venture under the law and that the required burden at trial could not be met. It also found that to proceed further with such a claim would waste the assets of the Succession. On November 29, 2017, it filed an order dismissing the lawsuit.
Paul appeals.
DISCUSSION
Motion to Dismiss
In his first assignment of error, Paul argues that the trial court erred in granting the motion to dismiss. He contends that Simran's dismissal of the Succession's claims benefits her personally; benefits her immediate family, i.e., her parents Karl and Sookham; and benefits the family business, i.e., Now Save. He states that by filing the motion to dismiss, Simran acted in a manner contrary to the best interest of the Succession.
The Succession argues that the trial court properly ruled on the motion to dismiss. It states that the trial court was correct that Paul did not submit any evidence to show that the suit to prove an oral joint venture would be successful. It contends that Kailash's deposition testimony proves that there was no clear understanding of the joint venture so as to create a contract. It emphasizes that this appeal is not about whether Simran has a conflict of interest in serving as administratrix.
Karl and Sookham argue that the determination of the trial court that dismissal was proper should not be disturbed. They contend that Simran exercised her duty to preserve and manage the property of the Succession by dismissing the claim and ending the costly litigation. They note that Karl adamantly denies that the parties formed an oral joint venture.
*1192 A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong or has no reasonable factual basis. Rosell v. ESCO , 549 So.2d 840 (La. 1989).
The essential elements of a joint venture and a partnership are the same, and joint ventures are generally governed by partnership law. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth. , 04-0211 (La. 3/18/04), 867 So.2d 651 ; Riddle v. Simmons , 40,000 (La. App. 2 Cir. 2/16/06), 922 So.2d 1267, writ denied , 06-0793 (La. 6/2/06), 929 So.2d 1259. A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. La. C.C. art. 2801.
In Riddle v. Simmons , 589 So.2d 89 (La. App. 2 Cir. 1991), writ denied , 592 So.2d 1316 (La. 1992), this court defined a "joint venture" as follows:
A joint venture results from the undertaking by two or more persons to combine their efforts, knowledge, property or labor to engage in and carry out a single business venture for joint profit. A joint venture is analogous to a partnership and controlled largely by the rules applicable to partnerships. There must be a sharing of the profits and losses with each party having some right of control over the business. The existence or non-existence of a joint venture is a question of fact and each case must be considered according to its circumstances. The principal difference between a partnership and a joint venture is that while a partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint venture is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years. No formal or specific agreement is required. Generally the relationship may be formed by an oral agreement and the existence of a joint venture may be inferred from the conduct of the parties and other circumstances.
A succession representative is a fiduciary with respect to the succession and shall have the duty of collecting, preserving and managing the property of the succession in accordance with law. La. C.C.P. art. 3191(A). He shall act at all times as a prudent administrator and shall be personally responsible for all damages resulting from his failure so to act. Id. A succession representative shall preserve, repair, maintain and protect the property of the succession. La. C.C.P. art. 3221.
A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to any appearance of record by the defendant. La. C.C.P. art. 1671. If the application is made after such appearance, the court may refuse to grant the judgment of dismissal except with prejudice. Id. After an appearance, the plaintiff's right to dismiss rests within the sound discretion of the court. Id. , cmt. (b) (1960). If it appears the plaintiff will not be able to substantiate his claim, a judgment of absolute dismissal must be rendered. Id.
The trial court considered the deposition testimony of Kailash and determined that based on this evidence, the Succession's claim that a joint venture existed between Manmohan, Kailash and Karl would fail at trial. In the October 27, 2011 deposition transcript introduced by the Succession, Kailash testified that she thought there was a joint venture in two *1193 convenience stores because she and Manmohan contributed the money and Karl contributed the labor. She and her husband purchased a convenience store in Monroe for Karl, and they purchased a second store approximately one year later. Karl was the administrator of the stores, and Kailash and Manmohan worked the cash registers on the weekends and holidays. She and Manmohan did not receive compensation for working in the stores, but they saw it as an investment in their retirement. They never received an accounting from Karl on the stores' profits and losses. She and Manmohan did not list the stores on their tax returns. Karl purchased additional stores, but Kailash and Manmohan were not involved in the acquisition of these stores and did not work in these stores. She described the first two stores as "a family business" and stated that she and her husband "might have [an] interest" in the first two stores, but had no interest in Karl's other stores. She noted that she filed the lawsuit against Karl and Sookham because Karl would not help her financially during her retirement.
In the May 9, 2011 deposition transcript introduced by Paul, Kailash testified that she, Manmohan and Karl had a "combined venture" of her and Manmohan's money and Karl's hard work. She thought they each owned a one-third interest. She noted that the agreement was orally made, and it was "understood from our [i.e., her and Manmohan's] side." She and Manmohan saw their contribution as an investment for their retirements. Karl worked day and night during the week, and she and Manmohan worked on weekends, holidays and summer vacations. She stated that it was up to Karl to advance the business and that she and Manmohan did not discuss with him how he spent their investment.
Considering the testimony reviewed by the trial court, it did not err in determining that the evidence did not demonstrate that a joint venture existed between Manmohan, Kailash and Karl. Kailash's testimony suggests that she believed there was a joint venture as to the first two convenience stores, which resulted from the combination of her and Manmohan's funds and Karl's labor, but she did not consider Karl's many other stores as part of the joint venture. She stated that the equal one-third ownership was understood from her and Manmohan's point of view; but, in his brief, Karl denies that the parties formed a joint venture. Kailash's testimony does not demonstrate that there was a sharing of the profits and losses-she and Manmohan made financial contributions, but they were unaware of the stores' profits and losses and did not include the stores on their tax returns. Karl controlled the business, and Kailash and Manmohan trusted him to make decisions to grow the business. Further, Kailash's action of dismissing her individual lawsuit against Karl and Sookham suggests that she did not believe that a joint venture existed. She also allegedly discussed her desire, as administratrix, to dismiss the Succession's claims against Karl and Sookham, but she did not accomplish this during her lifetime. See Dhaliwal II .
Because the trial court did not err in determining that a joint venture could not be proven at trial, it also did not err in granting the motion to dismiss filed by Simran on behalf of the Succession. It was Simran's duty as administratrix to act prudently and preserve the property of the Succession. She determined that pursuing a "frivolous" lawsuit that would fail at trial would squander the assets of the Succession, and the trial court agreed.
Accordingly, this assignment of error lacks merit.
*1194 Burden of Proof
In his second assignment of error, Paul argues that the trial court erred in shifting the burden of proof. He states that the trial court required him to prove that a dismissal was improper. He argues that Simran should have been required to prove her case by a preponderance of the evidence. He contends that Simran did not prove the merits of her motion; and, therefore, the trial court erred in granting it.
The Succession argues that Simran proved by Kailash's deposition testimony that there was no proof of an oral joint venture; and, therefore, she proved the merits of the motion to dismiss.
The trial court did not shift the burden of proof to Paul. It considered evidence produced by both parties, i.e., the depositions of Kailash and Simran's testimony. It determined that the evidence did not demonstrate the existence of a joint venture and, therefore, that Simran proved her argument that the lawsuit would fail at trial and should be dismissed.
Accordingly, this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court's granting of the motion to dismiss filed by the Succession of Manmohan Singh Dhaliwal. Costs of this appeal are assessed to Appellant Mahinderpal S. Dhaliwal.
AFFIRMED.
APPLICATION FOR REHEARING
Before Felicia Toney Williams, Frances Jones Pitman - Writing, Shonda D. Stone, Jeff Cox, and Jay Bowen McCallum, JJ.
Rehearing denied.