626 So.2d 811 (1993)
Robert E. RIDDLE, et al., Plaintiffs-Appellants,
v.
Gaylon D. SIMMONS and Louisiana State Gas Corporation, Defendant-Appellee.
No. 25170-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1993.
*812 Herman A. Castete, Winnfield, for plaintiff Robert Riddle.
Hargrove, Guyton, Ramey & Barlow by Joseph L. Hargrove, Jr., John C. Blake, Shreveport, for appellee.
James D. Caldwell, Shreveport, Bobby L. Culpepper, Jonesboro, for intervenor Charles Harold Allen.
Before HIGHTOWER, VICTORY and STEWART, JJ.
HIGHTOWER, Judge.
Charles H. Allen, intervenor in an action brought by two fellow joint venturers against a third for fraud in connection with the management of co-owned property, appeals a judgment sustaining an exception of prescription and dismissing his petition. For the reasons hereinafter stated, we reverse and remand.

BACKGROUND
In December 1977, Robert E. Riddle, James R. Baker, Gaylon D. Simmons, and Allen purchased several thousand acres of land in Jackson Parish and financed the acquisition as co-makers of a promissory note. The property overlaid the Caney Lake Field, and the new owners obtained benefit of an agreement by the previous proprietor, Crown Zellerbach Corporation, to take its share of gas in kind from producers at that location.
On September 23, 1983, Riddle filed suit against Simmons and Louisiana State Gas Corporation, alleging that Riddle, Baker, and Allen had entered into a joint venture with the defendant, Simmons, to develop the gas rights in the co-owned land and to construct a pipeline in that connection. The petition further averred that Simmons, acting through his solely-owned Louisiana State Gas Corporation, converted profits from gas agreements associated with the property and the pipeline to his use, while paying only $60,000 to the parties (later asserted to be by deposit into a joint bank account). Plaintiff *813 asked for an accounting, as well as his pro-rata share of profits due the joint venture.
On May 22, 1986, Baker intervened to set forth similar allegations. He maintained that each of the individuals possessed an area of expertise which they agreed to use in developing the property. As well as seeking damages for breach of the joint venture agreement, the petition alternatively pled breach of contract and unjust enrichment, and asked for specific performance.
Prior to the present intervention and appeal, this suit has come before us on several occasions and has yet to proceed to trial. See Riddle v. Simmons, 589 So.2d 89 (La. App. 2d Cir.1991), writ denied, 592 So.2d 1316 (La.1992); Riddle v. Simmons, 548 So.2d 113 (La.App. 2d Cir.1989). (In large part, the above-stated facts are synopsized from these opinions.) The first reported decision reversed a judgment sustaining an exception of no cause of action and dismissing Baker's claim. The second reversed a summary judgment in favor of defendants and classified the alleged agreement as a joint venture contract for the "management, exploitation, development or sharing of profits with reference to the co-owned property." Riddle, 589 So.2d at 93.
On June 29, 1992, Allen filed his intervention, as a plaintiff, posing allegations similar to those of Riddle and Baker. He specifically averred that Simmons set upon a "plan and/or scheme to deprive the other parties of their profits from the operation of the [joint venture]." The pleading sought damages, an accounting, and intervenor's share of the enterprise earnings.
In response, defendants excepted that, inasmuch as appellant's intervention alleged a breach of contract in 1978 or 1979, some thirteen to fourteen years earlier, the demand stood barred by ten-year liberative prescription. See LSA-C.C. Art. 3499. After a hearing, the trial judge sustained the exception and dismissed Allen's intervention with prejudice in a judgment signed September 15, 1992. The court later denied a motion for new trial.
Subsequently, on December 4, 1992, Allen moved to file an amended petition containing allegations that Simmons concealed the fraudulent scheme and that a refusal of accounting transpired no earlier than 1983. That same day, he also presented a motion to appeal devolutively the judgment sustaining the exception. The trial court granted both motions; however, notwithstanding the amendments, Allen pursued his appeal.

DISCUSSION

Amended Petition
At the outset, we consider an issue stemming from the amendments allowed by the trial court on the day that orders of appeal entered. Apparently, Allen sought to amend his petition of intervention and, at the same time, to appeal the judgment dismissing that petition. However, a party may not simultaneously travel both procedural routes.
The sustention of a peremptory exception of prescription is a final judgment obviously ending the case for the losing party. Lee v. Champion Ins. Co., 591 So.2d 1364 (La.App. 4th Cir.1991). Here, in response to such an exception, the trial judge dismissed appellant's intervention with prejudice. Upon rendition of a final judgment, the Code of Civil Procedure affords an unsuccessful litigant only the right to seek a new trial or to appeal. Loupe v. Circle, Inc., 545 So.2d 694 (La.App. 5th Cir.1989); Templet v. Johns, 417 So.2d 433 (La.App. 1st Cir.1982), writ denied, 420 So.2d 981 (La.1982).
Logically, a party cannot amend a dismissed petition. Loupe, Inc., supra; Templet, supra. LSA-C.C.P. Art. 1151 provides only for the amendment of an existing petition. If nothing exists to amend, there can be no amendment and orders so allowing are ineffective. Indeed, granting leave for amendments under the present circumstances arguably would permit the trial court to make substantive changes in a final judgment, an impermissible procedure under LSA-C.C.P. Art. 1951. See Gulfco Investment Group, Inc. v. Jones, 577 So.2d 775 (La.App. 2d Cir.1991). It is also noteworthy that the original determination here did not deem it appropriate to provide time for removing the grounds of the exception, as sanctioned by LSA-C.C.P. Art. 934.
*814 In any event, it is abundantly clear that the lower court did not possess authority to allow the supplemental and amended petition in question. After the signing of the judgment dismissing his intervention, and the denial of the new trial motion, appellant could only appeal. Thus, the order improvidently permitting Allen's amendment does not bear upon this appeal, and will be treated as vacated.

Prescription
One assignment of error asserts that the trial court erred in sustaining the exception of prescription. Appellant contends that Riddle's filing of the main demand, in 1983, interrupted prescription with respect to the challenged intervention. We find merit in that position.
Prescriptive statutes, under our jurisprudence, are strictly construed in favor of maintaining rather than barring actions. Taylor v. Liberty Mutual Ins. Co., 579 So.2d 443 (La.1991); Montminy v. Jobe, 600 So.2d 121 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1003 (La.1992). Consistent with that precept, recent decisions have tended to allow interventions, or claims by or against additional parties, to relate back to the filing of the original demand, so that, in effect, prescription is interrupted. See, e.g., Findley v. City of Baton Rouge, 570 So.2d 1168 (La.1990); Giroir v. South La. Med. Center, 475 So.2d 1040 (La.1985); Allstate Ins. Co. v. Theriot, 376 So.2d 950 (La.1979); Montminy, supra; Smith v. Williams, 535 So.2d 959 (La.App. 2d Cir.1988).
In such cases, no essential protective purpose of the prescriptive statute is violated by permitting post-prescription amendments or interventions that are based on the same factual situations pleaded in the original petition. The prescriptive limitation does not bar these subsequent claims because the defendant, through earlier legal demand on behalf of indicated interests, has received adequate and timely notice that his liability arising out of the factual occurrence is sought to be enforced. The fundamental purpose of prescription is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect against stale claims and the non-preservation of relevant proof. Giroir, supra; Allstate, supra. Notice to a defendant of legal proceedings on a claim interrupts prescription. Montiville v. City of Westwego, 592 So.2d 390 (La.1992); Allstate, supra.
The issues in Allstate, supra, concerned a third party intervention. There, the supreme court stated that the first suit will interrupt prescription when 1) based upon the same factual occurrence as the later claim by intervention or amended petition, and 2) the subsequent claimant is closely connected in relationship and identity of interest with the original plaintiff. Afterwards, in Giroir, supra, regarding an amended petition adding new plaintiffs, the court adopted a more flexible and concise four-part test. Under that analysis, such an amendment relates back if 1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; 2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; 3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; and 4) the defendant will not be prejudiced in preparing and conducting his defense.
Still, neither the Louisiana Supreme Court nor this court has directly addressed whether the indicated four-part test applies to interventions, such as before us. A memorandum decision, Taylor v. Charity Hospital of Louisiana in New Orleans, 476 So.2d 338 (La. 1985), merely remanded a matter to the fourth circuit for consideration of whether an intervention adding a plaintiff related back in light of Giroir, which had been rendered a month earlier. However, the recipient court subsequently never reached the issue, and, instead, dismissed the appeal as untimely. See Taylor v. Charity Hospital of Louisiana in New Orleans, 481 So.2d 1043 (La.App. 4th Cir.1985). The only case directly confronting the question, Duffie v. So. Pacific Transpor. Co., 563 So.2d 933 (La.App. 1st Cir.1990),[1] *815 held first that the four-step Giroir inquiry did not apply to an intervention, and then distinguished Allstate on seemingly factual grounds.
At any rate, we fail to appreciate the advantages from continued viability of two different tests. Pursuant to LSA-C.C.P. Art. 1091, a third party may intervene to enforce a right related to, or connected with, the object of the pending action against one or more parties thereto, by joining with the plaintiff in demanding the same or similar relief against the defendant. As indicated by the Comments accompanying that article and the jurisprudence, and contrary to the federal rules, interventions should be liberally allowed. See Banks v. Rattler, 426 So.2d 362 (La.App. 2d Cir.1983); Amoco Prod. Co. v. Columbia Gas Trans. Corp., 455 So.2d 1260 (La.App. 4th Cir.1984), writ denied, 459 So.2d 542, 543 (La.1984). Further, an intervention by a plaintiff under the Louisiana Code of Civil Procedure is quite comparable to adding a party plaintiff by amended petition.
Accordingly, the persistent utilization of different tests in these two similar situations can well produce conflicting, and thus undesirable, results. Moreover, we may draw from the actions of the supreme court that in both instances the same general principles should govern. See Taylor v. Charity Hospital, supra (remanding an intervention petition for consideration in light of Giroir); Findley, supra (using the "closeness of relationship" and "identity of interests" language from Allstate to explain parts of the Giroir inquiry).[2] Thus, although Giroir is based on LSA-C.C.P. Art. 1153 and concerns amended petitions, we apply its four-step test in determining whether Riddle's original petition interrupted prescription to the benefit of the present intervention.
Clearly, Allen's claim arises out of the same conduct, transaction, or occurrence set forth in Riddle's pleading. Both parties allege that Simmons and his solely-owned corporation acted in a manner depriving petitioners of profits from the co-owned property and their joint venture.
In reference to the second Giroir consideration, it is evident that defendant knew of the existence and involvement of the new plaintiff. Not only does the original petition name Allen as a party to the joint venture, but a property deed and joint checking account also reflect his connection to the enterprise at issue. Nor, given the small closely-held business endeavor, can defendant say that the parties are undiscoverable, too numerous, or hidden behind a corporate veil. Cf. Spencer-Wallington v. Serv. Merch., 562 So.2d 1060 (La.App. 1st Cir.1990), writ denied, 567 So.2d 109 (La.1990), finding the defendant not to be responsible for knowledge of undisclosed owners of a corporation.
We examine, in the third aspect of the Giroir test, the identity of interests and closeness of relationship between the new and old plaintiffs. Findley, supra. See also Allstate, supra. Here, Allen and Riddle are actually co-owners of the property in question. Additionally, in an earlier decision, this court determined that the original petition alleged the existence of a joint venture for the management of immovables. See Riddle, 589 So.2d 89. Clearly then, appellant cannot be considered wholly new and unrelated to the earlier petitioner.
Moreover, the original petition called for an accounting of the fruits and products of the subject property. That duty, owed by each co-owner receiving a profit from the land, arguably could obligate the original plaintiff to his fellow proprietors in case of recovery. See LSA-C.C. Art. 798; Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955); Succ. of Grubbs v. First Nat'l. Bank of Shreveport, 182 So.2d 203 (La.App. 2d Cir. 1965). Certainly, an intervening owner in indivision, seeking to protect his stake in an audit of the revenues from the realty, is not new and wholly unrelated. Cf. Becnel v. Wagnespack, 3 So. 536 (La.1888), where a *816 timely trespass suit by one co-owner interrupted prescription for the intervention of another titleholder.
In reference to the fourth Giroir component, precluding prejudice in preparing and conducting a defense, notice constitutes the critical element. Findley, supra; Giroir, supra. As with the third factor, the relationship between the new and old petitioners and their identity of interests assist in determining whether the defendant will suffer detriment upon the addition of another plaintiff. Findley, supra. Both Riddle and Allen, as stated, seek relief as co-owners and joint venturers. Hence, the initial demand, and most certainly Baker's subsequent timely intervention, should have put appellee on notice to preserve all relevant evidence concerning his management activities related to the enterprise. Apparently owing the same duty to all three plaintiffs, he will face no greater prejudice by answering to them in the same action.
Thus, upon considering the Giroir factors as adapted from Allstate, we conclude that the filing of the original petition interrupted prescription as to Allen's intervention. Accordingly, the trial court erred in sustaining the exception of prescription.

Other Assignments of Error
Although appellant sets forth other assignments of error in regard to the judgment sustaining the exception of prescription, these issues are now moot.[3]

CONCLUSION
For the foregoing reasons, the judgment sustaining the exception of prescription is reversed. Upon remand, the district court order allowing Allen to amend the intervention will be vacated in the course of further appropriate proceedings. All costs are assessed to defendants.
REVERSED AND REMANDED.
NOTES
[1] The fifth circuit, after dismissing an intervention for other reasons in Wood on Behalf of Hayes v. Hayes, 524 So.2d 241 (La.App. 5th Cir. 1988), applied Giroir to disallow an amendment adding the same intervening plaintiff and claim. It is unclear whether that court would approach an intervention alone in a different manner.
[2] Actually, the Giroir test essentially consists of the criteria established by Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983). Giroir, 475 So.2d at 1044.
[3] One of appellant's other arguments concerns the doctrine of contra non valentem. For a discussion of the parameters applicable to that assertion, see Plaquemines Parish Comm. Council v. Delta Devel. Co., Inc., 502 So.2d 1034 (La. 1987).